The next case this morning is 521-0312, People v. Zumwalt-Joplin. Arguing for the appellant, Mary Zumwalt-Joplin, is Craig Hanson. Arguing for the appellate, People of the State of Illinois, is Max Miller. Each side will have ten minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. We had a lengthy civil case this morning, so I appreciate your patience with us today. Mr. Hanson, you ready to proceed? Yes, your honor. Then go right ahead. Good morning, your honors. May it please the court opposing counsel. My name is Craig Hanson, and I represent the appellant, Ms. Mary Zumwalt-Joplin. The issue before this court today is whether the trial court erred in dismissing Ms. Zumwalt-Joplin's post-conviction petition, where she met the very low pleading standard of stating the gist of a constitutional claim. Specifically, she argued that post-plea counsel was ineffective for failing to present evidence that, if presented, would have arguably allowed her to withdraw her guilty plea. Where a petitioner raises the gist of a constitutional violation on a post-conviction petition, it should advance to the second stage. Accordingly, this court should reverse the dismissal of her petition and remand the case for further post-conviction proceedings. Ms. Zumwalt-Joplin pleaded guilty to aggravated battery, involuntary manslaughter, and concealment of a homicidal death. All charges stem from the death of her daughter, Alexis. In accordance with the negotiated plea, Ms. Zumwalt-Joplin was sentenced to a total term of 35 years of imprisonment. Following her plea, Ms. Zumwalt-Joplin filed a pro se motion to withdraw her guilty plea, alleging, among other claims, that forensic DNA reports would have undermined the factual basis provided by the state at her plea hearing. Post-plea counsel filed an amended and a second amended motion to withdraw her guilty plea, but did not include any of the claims she raised in her pro se motion to withdraw her plea. The trial court denied her motion and she appealed. On direct appeal, this court affirmed the denial of Ms. Zumwalt-Joplin's motion to withdraw her guilty plea, citing the fact that she failed to point to any evidence in the record to support her claim that post-plea counsel was ineffective for failing to include her guilty plea in either amended motions filed by counsel. She subsequently filed a pro se petition for post-conviction relief, which the trial court dismissed. In dismissing her petition, the trial court asserted that her claims were barred by res judicata and waiver. It is unclear as to which claims the trial court was referring to, as the court order appears to dismiss all claims on the where a defendant presents substantial new evidence, the doctrine of res judicata can be relaxed in the interest of fundamental fairness. Similarly, our Supreme Court held in People v. Harris that the doctrines of res judicata and waiver are relaxed where the facts relating to the claim do not appear on the face of the original appellate record. This is precisely the case before this court. Ms. Zumwalt-Joplin has now provided the court with documentary evidence in support of her claim that she did not receive the effective assistance of counsel. Accordingly, any argument that this claim is barred by res judicata due to this court's decision on direct appeal is without merit. Unlike her direct appeal, Ms. Zumwalt-Joplin specifically included documentary evidence in support of her post-conviction claim, the very evidence this court found fatal on direct appeal. The evidence here is a forensic report that found male semen in the victim's rectum. The significance of the forensic evidence is this, there is simply no plausible or credible explanation for the presence of semen in the rectum of an eight-year-old child that does not abuse or sexual assault. Was your client, let me stop you for a second, was the defendant charged with sexual assault? No, your honor. Okay, was there a charge to anyone else for sexual assault in the case? The record does not reflect that any suspects other than Ms. Zumwalt-Joplin was a suspect in this case. Okay, so how is the fact that, I mean it's heinous and I see your reasoning, but how is that pertinent to this particular case that's been on appeal a couple times since she wasn't charged with that particular crime? Your honor, the fact that semen was found in the victim is conclusive proof that the victim was also subject to sexual assault or abuse proximate in time to her death. It also indicates that someone other than the appellant here has a motive to prevent the victim from disclosing that she had been subject to sexual abuse or sexual assault. That objective fact casts doubt on Ms. Zumwalt-Joplin's guilt and supports her claim that she had a defense worthy of consideration by a jury. To stop you there and go back to what just Barrett said, if I remember reading the record correctly, did not the trial court at her was laid out and she agreed to go along with the plea, agreed she was pleading guilty, she agreed with the factual basis, she agreed with everything and had no issues, correct? That is correct, your honor. In fact, she agreed that she had nothing else to present at least 22 times, isn't that correct? I believe, your honor, what you're referring to understood the proceedings and she understood the proceedings at her guilty plea hearing when she said she had nothing to add that was at the hearing on her motion to withdraw guilty plea where her post plea counsel failed to raise any of the issues that she raised in her pro se motion to withdraw her guilty plea. Okay, thank you. The record indicates that the forensic report was available to both her plea and post plea counsels prior to the guilty plea and that she was aware of the report's existence and findings prior to pleading guilty. However, in accordance with her petition, she said the plea counsel indicated he would not provide evidence of the findings in the forensic report because it would quote make the state look bad. Ms. Zumwalt-Joplin would not have been in possession of the forensic report since it was included in the discovery materials provided to the attorneys which she would not have been able to retain in her possession. This explains why the evidence was not included in the record on direct appeal. It was not until she obtained a physical copy of the forensic report that she was able to support her claim with the evidence that she attached to her post conviction petition. Doubt as to guilt and a defense worthy of consideration are among the standards which trial courts should allow a defendant to withdraw a guilty plea. This has been the standard since our Supreme Court decided People v. Morreale in 1952. Now there's the phrase you just used the defense worthy of consideration. There's an argument the state makes with regard to that language hasn't been used in many, many years and so forth and so on. How do you respond to that? As we said, our Supreme Court in deciding People v. Morreale in 1952 included those. During the intervening 60 years, our Supreme Court has repeated those standards on five separate occasions. Furthermore, during the same period, our appellate courts have 27 published opinions, including a post Nero Roman decision issued by the fourth district. As recently as November 2021, less than a year ago, this court repeated that same standard established in Morreales with an unpublished opinion, People v. Jones. Now let me ask you this, and I appreciate that, what you've told us thus far, but with regard to the fact that the Supreme Court used that language back in the 50s and it's been used by them five times since then, only five times, let's phrase it that way. The state suggests that because it hasn't been used more frequently, it somehow is no longer good law. Are you aware of any cases that have distinguished or even have rejected that reasoning? Well, I can point to- Is that case still good law? Is that reasoning still good law in that case? Well, our appellate courts on 27 separate occasions, including on at least five cases since the publication of the Nero Roman decision ever repeated that standard. I'm not aware of any that states that Supreme Court precedence dies from disuse. In this case, Nero Roman seems to stand as an anomalous outlier, one that certainly has not been adopted since its publication by any of the appellate courts or the Supreme Court. Okay. Thank you for addressing that. Unless one of the other justices are concerned about that at this point, you just move right on if you would. I see my time is up for the aforementioned reasons. Ms. Simwal-Joplin praised this court find that the trial court erred in dismissing her post-conviction petition and to remand her case for further post-conviction proceedings and the appointment of counsel. Thank you, your honors. Let me, Justice Bowie, if counsel has any further statements, I felt like I took up a little bit of time with my line of questioning. If you want a little extra time, I would ask on your behalf that judge really grant it. But if you don't and you're ready to wait for your reply, that's fine. That's perfectly fine. If Mr. Hanson wants to finish before the rebuttal. I would like to address one more point and it relates to the issue of affidavit. In dismissing her petition, the trial court also pointed to the fact that she did not include an affidavit. As the court is aware, the petitioner is required to attach an affidavit or in the case of pro se petitioners, a certification attaching to the truthfulness of the claims made the petition. She does not include an affidavit, a separate affidavit with this. However, if I can direct the court's attention to the proof of service, it does include a signed and notarized statement attesting to the truthfulness of the filing, a statement that goes far beyond what is normally attached to a proof of service. I would direct the court's attention to that portion of the record. While this is perhaps an unconventional way to support the petition by affidavit or certification, it does have the effect of attesting to the truthfulness of her claims. We would ask this court to bear in mind that Ms. Zumwalt-Jofflin is a pro se litigant who provided numerous examples of documentary evidence in her petition, as well as an explanation as to why she was unable to provide other supporting affidavits from other witnesses. And then we ask the court to exercise some leniency as to the form of her attestation of truthfulness at this stage of the post-conviction process. Thank you. I apologize. Justice Barberis, do you have any further questions? I don't. Thank you. Justice Case? No, thank you. All right. Thank you, Mr. Hanson. Obviously, we'll give you your time for your rebuttal. Mr. Miller, if you're ready, go right ahead. May it please the court. Counsel, my name is Max Miller, and I represent the people of the state of Illinois. A defendant's post-conviction petition was properly dismissed where it was without basis in law and fact, as post-plea counsel's actions could not prejudice the defendant. As the court's aware, the defendant agreed to plead guilty to the charges of concealment of a homicidal death, aggravated battery of a child, and involuntary manslaughter in exchange for the state's dismissal of the remaining charges of first-degree murder and court accepted this negotiated plea and imposed the agreed-upon sentence. Defendant then filed a pro se petition to withdraw her guilty plea and vacate the sentence in accordance with Illinois Supreme Court Rule 604D, saying there was no factual basis to support the plea, that there's DNA evidence that was not presented at the time, and two additional claims referring to different witness statements that potentially exist out there or allegedly exist out there. Now, post-plea counsel filed an amended Rule 604D motion along with the Supreme Court Rule 604D certificate for the defendant. In that motion, defendant asserted that defendant's guilty plea was not knowing and voluntarily made due to a highly emotional condition and that the plea counsel led defendant to believe she had no other choice but to enter into the plea agreement. So after reviewing these documents, the circuit court proceeded to a hearing on the defendant's second amended motion. Post-plea counsel called the defendant to testify. At the close of her testimony, asked if there was anything else defendant wanted to know or hear with regard to the motion. Defendant responded no. After considering the evidence, the circuit court denied the motion. In support of that, the court noted its review of the transcript from defendant's plea hearing. There were 22 instances where defendant confirmed she understood the proceedings and was willing to continue with the plea negotiations. As this court's aware, defendant filed no appeal with this court. This court affirmed and defendant has since filed a petition for post-conviction release. Now, although at the first stage of post-conviction proceedings, the defendant must set forth only the gist of a constitutional claim, the threshold, the low threshold does not mean that the defendant's excused from providing any factual detail to support the alleged violation. During this first stage, the court must determine whether this petition is frivolous or patently without merit. Now, on appeal, defendant argues that her pro se post-conviction petition has at least one arguable claim of ineffective assistance of counsel and this makes the dismissal inappropriate. Specifically, defendant alleged her post-plea counsel failed to present evidence regarding conflicting information between DNA reports and autopsy findings. Defendant further asserts that the autopsy found no evidence the victim had been subject to sexual assault, while a rectal swab taken from the victim showed the presence of semen. In support of this, defendant included a laboratory report from the Illinois State Police. This identified the presence of semen in that swab taken from the victim. So, the defendant essentially asserts these two reports as contradicting each other. The state would first note that this is not the first time defendant has made the claim that post-plea counsel's ineffectiveness caused the record to be devoid of supporting evidence. As this court has previously found, post-plea counsel completed a 604D certificate, affirmantly stating that he consulted defendant in person, by mail, by phone, and or by electronic means to ascertain contentions there. This court noted in its previous opinion, nothing contained in the record contradicts that statement. And further, this court noted that contrary to defendant's argument, post-plea counsel presented defendant with an opportunity to raise any claims not addressed during the proceedings. So, this court held that defendant's negative answer when questioned about additional claims undermined her arguments of ineffectiveness already. So, in her pro se petition, defendant attached Exhibit 2. It's a one-page document summarizing the diagnosis made by forensic pathologist J. Scott Denton. Now, in that document, a line states, no evidence of sexual assault, fractures, or drug intoxication. Also attached is marked Exhibit 3, is an Illinois State Police report stating rectal swabs taken from defendant's daughter. No conclusion could be drawn respecting source of the semen. Both of these documents are dated prior to the June 23rd hearing. Now, at the outset, it's unclear what the introduction of these exhibits contribute to defendant's argument. The summary diagnosis presented by the defendant were dated August 15, 2011. The laboratory report dated November 4, 2013, cites examples collected as early as October 24, 2011. Or in the fourth exhibit, the rectal swabs were submitted again in August of 2011. Now, defendant seemingly argues this apparent inconsistency is present because there was no evidence of sexual assault, fracture, drug intoxication, and that's the language they've seen. But, you know, this makes a couple of assumptions, like the victim could not be sexually assaulted without leaving immediate evidence. That's something that we didn't get into because, although it was presented in the factual basis, defendant pled guilty. There's uncontested presence of semen that was later determined. So, after the autopsy and collected samples were analyzed, and this has no bearing on any of the defendant's charges as to what she pled guilty. As noted in the state's factual basis, the author of that summary diagnosis report would have testified defendant not had defendant not guilty that there was a bump to the forehead of Alexis, an injury that was diagnosed by Denton. Denton would testify that suffering of an injury to the head was recent. Denton would testify that cause of death was drowning, specifically brain injury derived from oxygen deprivation. Let me stop you for just a moment, if you would. With regard to the bump on the head, did this defendant admit to causing that injury at any time? The admission that the defendant, so when the state provided its factual basis, the state would point to an interview that the defendant gave. If you'll excuse me one moment to get the... There, I'm sorry, excuse me. But the state basically proffered that the recorded statements would show the defendant pointing first the guilt for Alexis' death on different individuals at first, but as it continued, and it would be revealed that Alexis was dead, that somebody took her from her bedroom, put some underwear on her, carried her through the house, passed her refrigerator outside the door. At this time, we see the defendant say that she was panicked, that she noticed her daughter had drowned in the bathtub, whether it had been in the fall. That's as close to an admission in that case as you would get, but she did not admit to causing the bump, just that she was not present when Alexis was in the bathtub and suffered this that her child from the bathtub and then that she did nothing in an attempt to try to save her child. Right. So the cause of death was not the bump on the head, it was the drowning. And so there's no admission by this particular defendant that she caused the bump on the head. Obviously, the line of thought would be that she either fell in the bathtub or was struck by something and went under the water where her lungs filled with water. And then when mom realized that she was under the water in the bathtub, removed her later on the floor and did nothing, which later, you know, which caused her to die from drowning, not from the bump on the head. Yes, sure. But so there's no admission by anyone in this case of how the bump on the head occurred or when it occurred. Just simply the doctor's notation that there was a recent contusion to her head. Yes, there are. Okay, thank you. Please continue. Sure. So, again, the state would just end by saying that on that portion that this Denton's testimony in combination with the video evidence that the defendant conceded would be established at trial when she accepted the plea, that none of these charges related to sexual assault for Alexis, as this court's very pointed out, and therefore really have no bearing. It's certainly not new evidence that is before this court, and so it doesn't change anything that she's put guilty to. Now, defendant attempts to bring in this challenge to her plea rests on case law, which suggests post-plea counsel was ineffective, where he fails to argue or present any evidence that could cast doubt on or show a defense worthy of consideration, and that's Morial. Now, the state merely pointed out that the fourth district has held that our Supreme Court has not used this language and has argued and said that this is rejected, but the state was not maintaining that this court is in any way bound to not consider that defense, and the state would say that the exhibit submitted by defendant neither suggest a defense worthy of consideration nor create a doubt as to her guilt. The point in citing that case was merely that this court should be aware for its analysis of just the reality of what's going on with this language in the Supreme Court, but all that's happened is the defendant has attached two reports without any indication as to whether these are full reports or merely portions of reports and suggests that a supposed inconsistency creates an avenue for her to withdraw her knowing and voluntary plea of guilty. Whether defendant was involved in or aware of the sexual assault of Alexis is unknown, but the facts that would have been established had to proceed to trial, the defendant conceded in her plea, and these are unchallenged by these reports, so the absence of these reports could not have prejudiced defendant since their presence doesn't contribute anything, and so we believe this court should affirm. Now, secondarily, the defendant argues the existence of this testimonial evidence, but I will rely on my brief for that unless this panel has any questions. I respectfully request that this court affirm. Well, I think we gave Mr. Hansen a minute or two to finish up, so I go right ahead, Mr. Miller, and let you do that. Okay, well, thank you, Your Honor. Well, so secondarily, just briefly, the defendant argues that the existence of testimony evidence would tend to cast doubt on her guilt, but as the trial court noted concerning the sole claim of actual innocence, there's no information provided as to the claim nor any support by affidavit. Defendant argues Ashley Adams' testimony would cast doubt on an alibi provided by Cory Parks, defendant's adult roommate on the night of this, but the alibi or lack thereof of Parkes has no bearing on the state's case derived from the forensic details and the video recorded interview. Now, in the video statement, the defendant admitted after the evidence of the autopsy revealed Alexis was injured in the bathtub from being struck in the head that she placed Alexis on the floor, didn't provide adequate life-saving measures, was panicked, didn't know what to do. Denton would testify that Alexis sustained great after failing to receive treatment. Post-plea counsel could not have prejudice defended by not providing this testimony when it has no bearing on the actual charges, and therefore, as the claim of prejudice is no arguable basis, the petition is frivolous or painfully without merit. Is there a time of death established? I don't know if this is beyond what you're arguing today, but I'm just curious. I do not recall that specific fact at this time, Your Honor, but I have to go. Because my understanding is her alleged theory that the adult male roommate was with someone, another woman, who then is willing to testify at least that she, that he left her at one o'clock in the morning, came back later with different shoes on and said, if anyone asks, I've been here the whole time. I'm just curious if any ever determined that the cause of death was before or after 1 a.m., and whether or not there's any other, if Ms. Joplin is trying to suggest that the male, obviously she's trying to suggest that the male roommate had something to do with this, but whether there's any other concrete evidence that would potentially point to him being involved in the death of the child. Yes, Your Honor, and I'm not familiar with the specific time of death. I could not speak to that at this time, but just to address that. Mr. Manson might be able to. Okay, sure. Thank you. Is there any other questions? No. No. All right. Thank you, Your Honor. Thank you, Mr. Miller. Mr. Hanson, go right ahead. Thank you, Your Honor. The state relies here on post-plea counsel's rule 604D certificate stating that counsel complied with the Supreme Court rule, and while that does create a presumption, it can be rebutted by the record. Here, we know the claim that was made in Ms. Zumwalt Joplin's pro se motion to withdraw a guilty plea, and we also know that given the dates and times and availability through the discovery process that it was alluded to by the state that both plea counsel and post-plea counsel were aware of the existence of the forensic report that Ms. Zumwalt Joplin has now attached her petition. So we knew that they were aware that there was evidentiary support for the claim in Ms. Zumwalt Joplin's pro se motion to withdraw a guilty plea, and the second amended motion to withdraw a guilty plea ignored that evidentiary basis for the claim in the pro se motion to withdraw a guilty plea. We know that the forensic report shows that there was semen inside the victim proximate to the time of the victim's death, and that the natural conclusion from that is that the victim was subject to sexual assault or abuse proximate in time to her death, and that would suggest that there is a male suspect who has motive here, that another allows an individual to withdraw a guilty plea on specifically that it casts doubt as to Ms. Zumwalt Joplin's guilt or that she had a defense worthy of consideration by a jury that essentially somebody else did this. Okay, let me ask you this. With regard to that, she's got a suggestion that maybe someone else was involved in the sexual assault of the child, which if the male roommate sexually assaulted her daughter, perhaps does have a reason to want the child dead to conceal that crime. However, is there any allegation that she ever made that she was not the last one to see her child alive in the bathtub? That she was the last person to see her child alive in the bathtub? Yes, she was a child. She testified or she admitted that she removed the child from the bathtub. Yes. And later on the floor. Yes. There's no suggestion that when she, you know, I don't understand exactly the facts here. If she walked into the bathroom, and the child was under the water, or if she was in the and did nothing after, you know, other than pull her out of the water when she went under, is she suggesting that the male roommate was somehow the last one to see the child alive in the bathtub? That particular claim is not one that appears in the record, Your Honor. How does I mean, she's not charged with sexual assault, she's charged with murder, and and and the sexual assault, allegedly, you know, perpetrated by the male roommate, exonerates her from the charges she was charged with and played guilty to? She does allege that she observed a male figure on top of her daughter in her in her post does allege that. But the record, she alleged who that is. Yes, she she alleged that it was her male roommate. And that was early morning hours. Approximately in time to the death. Yes. Okay. And do you know, I asked Mr. Miller, do you know the approximate time of death? I do not. And I don't believe the record establishes a particular time of death as established by the coroner. There was not a estimated time of death. I know her call to 911 was approximately 2am. That's correct. It would have been in the in early morning hours. Or where the sequence of events began. I know there was, there were statements made in the petition, and what have you, with respect to the activities of that evening, and when she put her children to bed, and what have you. But in terms of a conclusive time of Okay, thank you. Excuse me, the charges that she pled guilty to, though, were not some direct murder, they was involuntary manslaughter, wasn't it? Yes, Your Honor, it was involuntary manslaughter, and aggravated battery. Those were the concealment and concealment. Concealment was the was the third charge. Yes, Your Honor. And the aggravated battery obviously pertains to the bump on the head. That would that was the allegation that there was a bump on the head. Yes. Well, obviously, I think Mr. Hanson, you're out of town, but I will give you just a brief moment if you want to wrap things up. I would like to ask the court. Thank you, Your Honor. I would like to ask the court to provide the evidence that this court previously faulted her for not having. That evidence is now part of this record. That evidence conclusively establishes that this victim was the subject of sexual assault or sexual abuse by a male subject proximate in time to her death. That casts at least some doubt perhaps on her guilt or at least a provider with a defense worthy of consideration. That information was available to her plea and post plea counsel. They did nothing with it. Right now, the standard is she must state the gist of the constitutional claim. She has supported that with evidence. She has done what this court said she was unable to do on direct appeal. I ask that this court remand this case back to the trial court for second stage proceedings in the appointment of counsel where she would then be required to make a substantial showing. But that is not the showing that she is required to make at this particular stage. Thank you, Your Honor. Thank you, counsel. Justices, before we let these go, thanks. All right. Well, again, thank you, gentlemen. Thank you for your patience with us today. I believe that concludes our oral arguments today and we will stand in recess until tomorrow morning at nine o'clock. So thank you, gentlemen. Y'all have a great day.